UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE ARNOLD,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON B. SESSIONS,<br><br>Defendant. | Case No. 4:18-cv-00553-KAW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 42 |

On October 1, 2018, Defendant Jefferson B. Sessions ("Defendant") filed a Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") ("Motion to Dismiss"). (Def.'s Mot., Dkt. No. 43.) On October 15, 2018, Plaintiff Natalie Arnold ("Plaintiff") filed an opposition in response to Defendant's Motion to Dismiss. (Pl.'s Opp'n, Dkt. No. 44.) On October 22, 2018, Defendant filed a reply. (Def.'s Reply, Dkt. No. 46.) On November 15, 2018, Plaintiff filed an Administrative Motion for Leave to File a Sur-Reply to Defendant's Motion to Dismiss ("Motion for Leave to File Sur-Reply"). (Dkt. No. 49.) On November 16, 2018, Defendant filed an opposition to Plaintiff's Motion for Leave to File Sur-Reply. (Dkt. No. 50.) On December 3, 2018, the Court denied Plaintiff's Motion for Leave to File Sur-Reply. (Dkt. No. 53.) For the following reasons, the Court hereby GRANTS Defendant's Motion to Dismiss.

## I. BACKGROUND

Plaintiff is a Special Agent with the Federal Bureau of Investigation ("FBI") and has held that position for eight years. (Pl.'s Opp'n at 1.) In 2016, Plaintiff requested a transfer to a criminal squad "so that she could become a better-rounded agent and eventually a more viable candidate for an Executive Management position." (*Id.*) In November of 2016, Plaintiff transferred to a criminal squad, Squad C-1. While working with Squad C-1, Plaintiff alleged that she experienced various acts of discrimination. (Second Amended Complaint ("SAC"), Dkt. No. 38 at 3-35.)

For example, in December of 2016, a rookie male agent joined Squad C-1 and Plaintiff stated that this male agent was being given substantive case work while she was being given more administrative assignments. (Pl.'s Opp'n at 1.) Plaintiff not only alleges that she was denied the opportunity to perform substantive case work that the male agents on Squad C-1 were provided, but also that the male agents on Squad C-1 actively worked to exclude her from performing such work, even on active cases for which no work had been done in months. (*Id*.) Plaintiff further asserts that against this backdrop, Squad C-1 was also effectively a "romper room" where the male agents created and encouraged a work environment rife with jokes of a sexual nature. (*Id*.)

FBI Policy Directive 0831D governs complaints of harassment and retaliation made by employees of the FBI. (*Id.*) On January 25, 2017, in accordance with this directive, Plaintiff reported to her supervisor that she felt Squad C-1 was a hostile work environment and requested a transfer. (*Id*.) When that report failed to lead to any change in Squad C-1 or any transfer, Plaintiff took the next step as set forth by Directive 0831D and reported her problems to a higher level official, Special Agent in-Charge ("SAIC") John "Jack" Bennett. (*Id*.) On March 1, 2017, Plaintiff met with SAIC Bennett, who responded to her concerns by stating: "I know exactly what you're talking about. I have a wife and daughter. I do not agree with women being treated like that." (*Id*.) SAIC Bennett also assured Plaintiff that he would "take care of it." (*Id*.) When Plaintiff finally realized that SAIC Bennett was not going to take any action and instead "retaliate[ed] against her for reporting discrimination and a hostile work environment," she initiated Equal Employment Opportunity ("EEO") counseling on April 19, 2017. (*Id*.; Def.'s Mot. at 2.)

The Second Amended Complaint ("SAC"), which is currently operative, was filed on August 27, 2018. (Dkt. No. 38.) The SAC alleges that Plaintiff "was discriminated against based on her sex, subjected to a sexually hostile work environment, and retaliated against for complaining about discrimination, a hostile work environment and retaliation" from November 2016 through June 2018. (Pl.'s Mot. at 9) (citing SAC ¶¶ 1, 16-103). The SAC also asserts four claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*: (1) First – Disparate Treatment, (2) Second – Disparate Impact, (3) Third – Hostile Work Environment and (4) Fourth – Retaliation. (Pl.'s Mot. at 13-14) (citing SAC ¶¶ 121-131).

Defendant's Motion to Dismiss, which was filed on October 1, 2018, made two main arguments: (1) first, that the SAC's disparate treatment claim should be dismissed under Rule 12(b)(1) because it was time-barred, and (2) second, the SAC's disparate impact claim should be dismissed under Rule 12(b)(6). (Def.'s Mot. at 2, 10-15.) Plaintiff provided counter-arguments to each of these two arguments in her opposition. (Pl.'s Opp'n at 10-27.) In its Reply Brief, Defendant withdrew its challenge to the SAC's disparate treatment claim.[1] (Def.'s Reply at 1, n.1.) Therefore, the only issue that still needs to be resolved for Defendant's Motion to Dismiss is whether the SAC sets forth a plausible disparate impact claim. For the reasons provided below, the Court answers this inquiry in the negative.

## II. RELEVANT LAW

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court may also dismiss the case or a claim "only where there is no cognizable legal theory" or where there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

To avoid a Rule 12(b)(6) dismissal, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *Weber v. Dep't of Veteran Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] Because Defendant withdrew its arguments to dismissing the SAC's disparate treatment claim, which focused on how that claim was time-barred and hence lacked subject matter jurisdiction, the Rule 12(b)(1) aspect of Defendant's Motion to Dismiss has also been withdrawn.

3

*Ashcroft*, 556 U.S. at 678; *Twombly,* 550 U.S. at 556. Given that the complaint should be construed favorably to the pleader, the court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim. *Corsini v. Canyon Equity, LLC*, No. C 10-2061 JL, 2011 WL 13247445, at *2 (N.D. Cal. Feb. 14, 2011) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)); *see also NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In other words, so long as the complaint states a plausible claim, it survives a Rule 12(b)(6) motion unless the defendant offers an alternative explanation "so convincing" as to render plaintiff's claim "implausible." *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 956 (N.D. Cal. 2014) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Generally, if the court grants a motion to dismiss and dismisses a complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Moreover, dismissal with prejudice is proper only if amendment is futile or if the "complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

**B.  Disparate Impact**

To establish a prima facie case of disparate impact under Title VII, a plaintiff must plead: "(1) the existence of outwardly neutral practices; (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices; and (3) facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact." *Thomas v. San Francisco Housing Authority*, No. 16-cv-03819-CRB, 2018 WL 1184762, at *4 (N.D. Cal. March 7, 2018) (quoting *Hernandez v. Sutter West Capital*, No. C 09-03658 CRB, 2010 WL 3385046, at *3 (N.D. Cal. Aug. 26, 2010) (citing *Pfaff v. U.S. Dept. of Housing and Urban Dev*., 88 F.3d 739, 745 (9th Cir.1990)); *see Paige v. California*, 291 F.3d 1141, 1144 (9th Cir. 2002) ("In order to make a prima facie case of 'disparate impact' under Title VII, the plaintiffs must show 'that a facially neutral employment practice has a 'significantly discriminatory' impact upon a group protected by Title VII.'") (citing *Moore v.*

4

*Hughes Helicopters, Inc.*, 708 F.2d 475, 481 (9th Cir.1983)); *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002) ("To establish a prima facie case of disparate impact under Title VII, [a plaintiff] must: (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact.") (citing *Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477, 1482 (9th Cir.1987) (en banc)).

## III. DISCUSSION

The only pending issue for adjudicating this Motion to Dismiss is whether Plaintiff's SAC sets forth a plausible claim for disparate impact.

### A. Defendant's Initial Position

Defendant asserts that the SAC sets forth no viable disparate impact claim because the five theories Plaintiff floats for pleading it – (1) the FBI's alleged failure to take corrective action has led to "system wide discrimination against women"; (2) the FBI's EEO policy is flawed; (3) "the treatment of [Plaintiff] is part of an ongoing pattern and practice of discrimination against women"; (4) the FBI's EEO Office attempts to "shield" the agency from liability; and (5) the FBI does not require "internal investigations" (i.e., an Office of Professional Responsibility ("OPR") investigation) upon receipt of complaints of discrimination or retaliation – do not suffice for stating a sufficient claim under Rule 12(b)(6). (Def.'s Mot. at 11-12.)

Furthermore, Defendant argues that the SAC lacks the "essence" of a disparate impact claim, which is "regardless of motive, a facially neutral employer practice or policy, bearing no manifest relationship to job requirements, in fact had a disproportionate adverse effect on members of the protected class." (*Id.* at 12) (citing *Brown v. FPI Management, Inc.*, C11-05414 YGR, 2012 WL 629182, at *4 (N.D. Cal. Feb. 27, 2012)).

Defendant additionally avers that the SAC's allegations for disparate impact are conclusory because they leap from targeted disparate treatment of Plaintiff to speculation about what may happen to others, which is an improper form of analysis due to how disparate treatment and disparate impact are not the same (specifically, disparate impact usually focuses on statistical disparities, rather than specific incidents like disparate treatment, and on competing explanations

5

for those disparities). (Def.'s Mot. at 12.) Essentially, Defendant argues that the SAC attempts to "recast" the disparate treatment claims as a disparate impact claim by merely tacking on broad language but fails to point to any specific FBI policy concerning promotions, work assignments, or discipline, nor does it explain how there is any disparate impact on a protected group. (*Id.* at 13) Ultimately, Defendant maintains that the SAC's "bare, broad words are not enough" to plead disparate impact. (*Id.*)

Defendant further contends that the FBI's EEO policies are not actionable under disparate impact because the 45-day rule is valid and nowhere in the SAC is it explained how the FBI's EEO policy has a disparate impact on a protected group. (*Id.* at 13-14.)

Finally, Defendant states that the SAC's allegation that the FBI mishandled her second EEO claim is not a viable disparate impact theory because (1) under 29 C.F.R. § 1614.107(a)(8), a claim "[t]hat alleges dissatisfaction with the processing of a previously filed complaint" should be dismissed for failure to state a claim, (2) the SAC contains no explanation of how the EEO office's handling of complaints has a disparate impact on a protected group, (3) if a claimant disagrees with the outcome of the EEO process, his or her remedy is to bring a suit in federal court under 29 C.F.R. § 1614.407, and (4) Plaintiff's prior EEO claims alleged only disparate treatment, thus precluding her from bringing a disparate impact claim in her lawsuit. (*Id.* at 14.)

### B. Plaintiff's Opposition

In response, Plaintiff argues that she has met the standards under Rule 12(b)(6) because the 37-page, detailed SAC sets out plausible allegations of FBI practices and policies that have a disparate impact on women. (Pl.'s Opp'n at 12.) For example, Plaintiff argues that to state a claim for disparate impact under Title VII at the pleadings stage, all she must do is identify facially-neutral policies or practices of the Defendant/FBI and allege facts that plausibly suggest that the challenged practices caused an adverse impact on a protected class. (*Id.* at 12-13.) Plaintiff further asserts that contrary to what Defendant suggests, a statistical showing of a disparate impact is not required at the pleadings stage. (*Id.* at 13.) Thus, Plaintiff contends that her SAC adequately pleads a cause of action for disparate impact discrimination caused by two sets of practices: (1) Defendant's policies and practices for handling EEO complaints, and (2) Defendant's "subjective

and discretionary" practices regarding "promotions, assignments to units, and cases" because under the *Iqbal/Twombly* standard, it is plausible that the practices described on the face of the SAC exist and have an adverse impact on a protected class. (*Id.*)

Plaintiff also states that the allegations in the SAC are not "conclusory," as Defendant accuses them of being, but are in fact specific and detailed. (*Id.*) For instance, in over two pages of the SAC, Plaintiff "exhaustively alleges the specific ways in which Defendant's EEO policies and practices thwart an employee's ability to bring a timely complaint to the FBI's EEO counselors and thus thwart the right to file a lawsuit." (*Id.*) The SAC additionally alleges that such EEO practices and policies have a disparate impact on women and far from being "conclusory," these allegations are "quite detailed." (*Id.*) As an example, Plaintiff mentions how the SAC alleges that certain FBI procedures involving EEO counseling and the Office of Equal Employment Opportunity Affairs (OEEOA) (e.g., "fragmentation," where the FBI identifies each piece of factual evidence offered by the Plaintiff as a separate and distinct legal claim and ignores the Plaintiff's real underlying issue of a pattern or practice of ongoing discrimination) have a disproportionately adverse impact on women and on people who seek to complain about workplace discrimination. (*Id.* at 13-14.) Plaintiff also points out that the SAC specifically alleges the impact that these practices have, *e.g.*, the policy of telling employees to try and resolve harassment complaints "informally" can delay EEO counseling, which can cause (some or all of) a complaint to be time-barred and can "prevent investigation into allegations," the false legal information the OEEOA gives complainants has the effect of the FBI rejecting potentially valid claims, and the FBI has a "culture that does not take discrimination and retaliation seriously and permits it to exist…[leading to] ostracization for those who complain." (*Id.* at 14-15.) Plaintiff further argues that Defendant does not even attempt to challenge the SAC's exhaustive set of factual allegations as being not specific or plausible enough under *Iqbal/Twombly*, and cites no authority for the proposition that it is not "a viable theory" (apparently as a matter of law) to say that an agency's practice of mishandling EEO complaints causes a disparate impact on women or any protected class, aside from a few irrelevant federal regulations that do not apply to Rule 12 or the allegations in this lawsuit. (*Id.* at 15.)

Moreover, Plaintiff contends that she does not need to provide an "explanation" of how the FBI's policies have a disparate impact on a protected group, and need only allege – at the pleadings stage – that they do so, which she has done here. (*Id.* at 15-16.) Plaintiff states that because it is not only plausible, but highly likely, to make the reasonable inference that the practices described in the SAC (which place obstacles along every step of the way for an FBI employee who wants to complain of discrimination or harassment) would have a disparate impact on women and other protected groups, the SAC clearly exceed Rule 12(b)(6)'s non-stringent "reasonable inference" pleading standard.

Plaintiff then describes the many instances listed in the SAC of Defendant's subjective and discretionary practices regarding assignments to squads, supervisors, cases and duties. Plaintiff further argues that while it is true that the SAC's allegations focus on specific instances of subjective and discretionary treatment of Plaintiff, the facts laid out in the SAC, as pleaded, make clear that the FBI allows its supervisors significant subjective decision-making discretion, and the delegation of this discretion to lower-level supervisors can be the basis of Title VII liability under a disparate impact theory since "an employer's undisciplined system of subjective decision-making" can have "precisely the same effects as a system pervaded by impermissible intentional discrimination." (*Id.* at 16) (citing *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 498 (N.D. Cal. 2012) ("In *Ellis*, for instance, the plaintiffs alleged that Costco effected a disparate impact on women by allowing its supervisors and managers unfettered discretion over internal promotions. This was not only sufficient to state a claim, it was sufficient to merit class certification.")). (*Id.*) Plaintiff then goes onto list several categories of "subjective and discretionary practices" of the FBI that the SAC alleges has a disparate impact on women as FBI practices relating to: (a) squad assignment, (b) case assignments, (c) duties and authority, (d) supervisors, and (e) usage of the squad break room and storage areas as changing rooms. (*Id.* at 17-20.)

Finally, Plaintiff provides specific instances where female FBI agents experienced discrimination to demonstrate that the SAC adequate alleges how the FBI's subjective practices have a disparate impact on women. (*Id.* at 20-21.) Plaintiff also notes that a Title VII disparate impact claim need not allege statistical support to survive a motion to dismiss. (*Id.* at 21.)

8

**C. Defendants' Reply**

In reply, Defendant states that the SAC misses all three elements necessary to plead a disparate impact claim, namely, (1) a specific "outwardly neutral" policy, (2) a "significantly adverse or disproportionate impact" on a protected group that is "produced by" the policy, and (3) "facts demonstrating a causal connection" between the policy and the alleged impact. (Def.'s Reply at 1) (citing *Thomas,* 2018 WL 1184762, at *4). Also, in response to Plaintiff's argument that Defendant excepts to see "statistical data" on its disparate impact claim, Defendant states that "[n]o one has to show any math just yet," but the pleading must do more than "speculate regarding the effect" of a specific practice on a protected group. (Def.'s Reply at 2) (citing *Brown,* 2013 WL 629182, at *4). In other words, a plaintiff "must allege something more than the conclusory assertion that the facially neutral policy [he or she] oppose[s] in fact causes the disparate impact they challenge." (Def.'s Reply at 2) (citing *Moussouris v. Microsoft Corporation*, C 15-1483 JLR, 2016 WL 4472930, at *10 (W.D. Wash. March 7, 2016)).

Defendant also states that the SAC posits two main theories for disparate impact: (1) that the disparate treatment Plaintiff alleges shows that the general discretion of FBI supervisors has a disparate impact on female agents; and (2) that the EEO office does a poor job of processing complaints. (Def.'s Reply at 1, 3.)

For the first theory, Defendant argues that a slight rebrand of the SAC's disparate treatment claim (as disparate impact) is not enough. (*Id.* at 3.) That is, while the SAC may state several instances of disparate treatment Plaintiff encountered, no "outwardly neutral" policy or practice ever emerges from the various procedures Plaintiff claims are discriminatory or subjective. (*Id.*) Moreover, Defendant argues that the FBI's delegation of discretion to supervisors is not a specific practice or policy but a general concept, and that concept alone cannot anchor a disparate impact claim. (*Id.* at 1, 3.) Defendant also distinguishes the *Ellis* case cited by Plaintiff by pointing out how the specific practices and procedures in *Ellis* (and in a hypothetical mentioned in *Ellis* describing a policy where police officers were allowed to select their own partners) are strikingly different than "the general idea that supervisors have discretion." (*Id.* at 3-4.) (citing *Ellis,* 285 F.R.D. at 498, 531-32.)

Thus, Defendant asserts that the various subjective practices alleged in the SAC do not point to any specific policy and that the SAC says very little about other female agents. (Def.'s Reply at 4.) Defendant also contends that the SAC's focus on specific instances of subjective and discretionary treatment of Plaintiff and with little else cannot suddenly morph a claim for disparate treatment into one for disparate impact. (*Id.* at 4-5.); *see* (*Id.* at 1) ("the SAC only speculates that because Plaintiff was allegedly mistreated, other female agents were too. And besides the things that allegedly happened to [Plaintiff], the SAC has no facts linking general discretion to a disparate impact on others.")

For the second theory, Defendants assert that there is simply no right under Title VII to sue for the way an EEO claim is handled. (*Id.* at 1) (citing *Jordan v. Summers,* 205 F.3d 337, 342 (7th Cir. 2000)). Namely, "Title VII is the exclusive remedy for federal employees to sue for workplace discrimination." (*Id.* at 5) (citing *Brown v. Gen. Sevs. Admin.*, 425 U.S. 820, 829 (1976)). Defendant further argues that under Title VII, the only way to address the way an EEO complaint is handled is by filing suit, which is occurring here. (Def.'s Reply at 5) (citing *Armstrong v. Sessions,* C 17-1857 LSC, 2018 WL 3352956, at *5 (N.D. Ala. July 19, 2018)).

### D. The Court's Ruling

On balance and considering the arguments from both parties, The Court finds that Plaintiff had not adequately alleged a disparate impact claim in her SAC. As set out previously, the three requirements for pleading a disparate impact claim under Title VII are: "(1) the existence of outwardly neutral practices; (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices; and (3) facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact." *Thomas*, 2018 WL 1184762, at *4.

#### 1. The Existence of Outwardly Neutral Practices

For (1), the existence of outwardly neutral policies, Plaintiff points to two sets of practices: the FBI's (a) policies and practices in handling EEO complaints, and (b) "subjective and discretionary" practices regarding "promotions, assignments to units, and cases" which are not specific policies *per se* but practices falling under the "discretion" afforded FBI supervisors.

10

### a. The FBI's Policies and Practices in Handling EEO Complaints

From the allegations in the SAC, it appears that the FBI's (a) policies and practices in handling EEO complaints derive from FBI Policy Directive 0831D, which governs complaints of harassment and retaliation made by employees of the FBI and which is also in writing because it directs an employee to "first tell the alleged harasser that the conduct is unwelcome and needs to stop" or, if the employee is "afraid of or uncomfortable confronting the offending party, the employee should report the incident to an appropriate supervisor to protect all legal rights and to put the FBI on notice to address the behavior." (Pl.'s Opp'n at 1; SAC ¶ 109). Therefore, this FBI Policy Directive 0831D meets the requirements of a facially or outwardly neutral policy or "specific, identified, employment practice or selection criterion" found to satisfy this prong of a disparate impact claim according to Ninth Circuit case law. *Stout v. Potter*, 276 F.3d 1118, 1121–22 (9th Cir. 2002) (citing *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir.1990)).

### b. The FBI's "Subjective and Discretionary" Practices

As an aside, and unnecessary to the disparate impact claim analysis because the Court has already found FBI Policy Directive 0831D a sufficient outwardly neutral policy, the Court disagrees with Plaintiff in that the "subjective and discretionary" practices of FBI supervisors regarding "promotions, assignments to units, and cases" (as well as regarding duties and authorities, supervisors, and usage of the squad break room and storage areas as changing rooms) (Pl.'s Opp'n at 17-20) amount to a facially outward neutral policy. First, such practices are not "specific, identified, employment practice or selection criterion" under the law. *Stout,* 276 F.3d at 1121-22. Second, Plaintiff cites the case of *Ellis* for the allegedly "well-settled" proposition that "giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory since 'an employer's undisciplined system of subjective decision-making [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination." 285 F.R.D. at 498. However, as Defendant points out, instead of the vague FBI supervisory and discretionary practices the SAC here alleges, the *Ellis* case involved specific, identified employment practices or policies such as "a tap-on-the-shoulder appointment process (without an application or interview), the mandated lack of posting for open positions, promotion

11

1  exclusively from within, a requirement of MM [Merchandise Manager] experience (for AGM
2  [Assistant General Manager] and AGM experience (for GM [General Manager])…reliance on
3  promotable lists of desired candidates, reliance on common but unvalidated criteria for assessing
4  candidates (supplied by the CEO and other top executives), and placing a premium on schedule
5  flexibility and ability to relocate." (Def.'s Reply at 3) (citing *Ellis,* 285 F.R.D. at 531.) As a result,
6  the Court declines to identify the FBI supervisory and discretionary practices as facially outward
7  neutral policies or specific, identifiable employment practices (or selection criterion).

### 2. Significantly Adverse or Disproportionate Impact

Even though Plaintiff's SAC has identified an outwardly neutral policy as discussed above, it fails to adequately allege (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices. A prima facie case of disparate impact establishing this prong is "usually accomplished by statistical evidence showing 'that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants.'" *Stout*, 276 F.3d at 1122 (citing *Robinson v. Adams*, 847 F.2d 1315, 1318 (9th Cir.1988) (quoting *Moore v. Hughes Helicopters, Inc*., 708 F.2d 475, 482 (9th Cir.1983)). For instance, "[s]tatistical evidence is used to demonstrate how a particular employment practice causes a protected minority group to be under represented in a specific area of employment (for example, hiring or promotion)." *Paige v. California*, 291 F.3d 1141, 1145 (9th Cir. 2002) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)). Although statistical data alone, in a proper case, may be adequate to prove causation, *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 650 (1989), the "statistical disparities must be sufficiently substantial that they raise such an inference of causation." *Watson*, 487 U.S. at 995; *see also Clady v. County of Los Angeles*, 770 F.2d 1421, 1428-29 (9th Cir.1985).

Although both Plaintiff and Defendant cite cases out of this District for the proposition that a Title VII disparate impact claim need not allege statistical support to survive a motion to dismiss,[2] several cases in this District have found pleading statistical data to be a definite and

---

[2] *See* (Pl.'s Opp'n at 21) (citing *McQueen v. City of Chicago*, 803 F.Supp.2d 892, 906 (N.D. Ill. 2011); *United States v. Maricopa Cty., Ariz.,* 915 F.Supp.2d 1073, 1078 (D. Ariz. 2012) (also cited

12

undeniably sufficient way of establishing "significantly adverse or disproportionate impact on persons of a particular type." *See Filho v. Gansen*, No. 4:18-CV-00337-KAW, 2018 WL 5291986, at *4 (N.D. Cal. Oct. 19, 2018) ("On balance, the Court finds that Plaintiff has not sufficiently plead disparate impact, primarily because…Plaintiff has not provided any statistical data that shows a disproportionate impact on persons of a particular type…produced by Defendant's facially neutral acts or practices."); *Hernandez v. Sutter W. Capital*, No. C 09-03658 CRB, 2010 WL 3385046, at *4 (N.D. Cal. Aug. 26, 2010) ("Plaintiff has set forth a disparate impact claim because he has pleaded the existence of outwardly neutral policies and that such policies have had a disparate negative impact on Hispanics generally and him specifically. Plaintiff has incorporated into the SAC a study from the Center for Responsible Lending that, taken in the light most favorable to him, found that Hispanics received loans that were worse than those received by similarly situated Caucasian borrowers."); *City of Oakland v. Wells Fargo Bank, N.A.*, No. 15-CV-04321-EMC, 2018 WL 3008538, at *12 (N.D. Cal. June 15, 2018) ("At the pleading stage, a disparate-impact plaintiff must 'allege facts ... or produce statistical evidence demonstrating a causal connection' "between the ... policy and the disparate impact.' … Together, these practices caused a 'statistically significant adverse effect on minority borrowers.' … and the disparate impact on minority borrowers for pleading purposes.")

    Thus, the "upper end" for sufficiently alleging the "significantly adverse or disproportionate impact on persons of a particular type" prong is met by pleading some form of statistical data. The "lower end" for this prong is the bare minimum under *Iqbal/Twombly*, a pure speculation "regarding the effect" of a specific practice on a protected group, *Brown,* 2013 WL 629182, at *4, or having a plaintiff "allege something more than the conclusory assertion that the facially neutral policy they oppose in fact causes the disparate impact they challenge." *Moussouris v. Microsoft Corp.*, No. C15-1483JLR, 2016 WL 4472930, at *10 (W.D. Wash. Mar. 7, 2016) (citing *Iqbal*, 556 U.S. at 678).

//

---

in Def.'s Reply at 2)

Here, for the identified facially neutral policy of FBI Policy Directive 0831D, Plaintiff fails to allege any facts establishing women, or even another woman or single female FBI agent, were subject to "a significantly adverse or disproportionate impact" as a result of the Directive 0831D's policy for reporting and handling harassment for FBI agents. Here, the main facts that the SAC alleges concerning female FBI agents include only how: (1) Plaintiff and "another woman on [Squad C-1] continued to be relegated to be assigned administrative work," (2) an email about a future meeting was sent to others before it was sent to Plaintiff and another female agent, and (3) another female agent was once assigned "administrative" work on a case. (Def.'s Reply at 4) (citing Pl.'s Opp'n at 19; SAC ¶ 36.) However, all of these facts relate to the "subjective and discretionary" practices that the Court found as not constituting a specific and readily identifiable outwardly neutral employment policy. Therefore, Plaintiff has not provided an adequate factual basis, which would ideally constitute statistical data, for pleading a "significantly adverse or disproportionate impact on persons of a particular type" as to FBI Policy Directive 0831D.

### 3. Causal Connection

Because Plaintiff's SAC has failed to sufficiently plead "a significantly adverse or disproportionate impact on persons of a particular type," as set forth above, there is no need to analyze the last prong of disparate impact, "facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact."

## III. CONCLUSION

Accordingly, for the above reasons, the Court hereby GRANTS Defendant's Motion to Dismiss without prejudice. Plaintiff is given leave to amend her complaint, however.

IT IS SO ORDERED.

Dated: December 21, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge